IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JACK PARKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:10-cv-03275-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Pending before the Court is Plaintiff Jack Parker's ("Parker") Social Security Complaint [Doc. # 3]. Parker seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of his request for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq.,* for the period April 30, 2008 through November 6, 2009. The Administrative Law Judge ("ALJ") found that Parker was not under a disability during that period. Such determination became the final decision of the Commissioner when the Appeals Council denied Parker's request for review. Parker has exhausted his administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). For the following reasons the Court reverses and remands for the ALJ to reconsider Parker's RFC after taking into account limitations caused by all of Parker's impairments.

I.  **Background**

### A. Factual and Procedural History[1]

Parker, who has a sixth-grade education, has most recently been employed as a general laborer on a food assembly line and as a truck driver. [Tr. 25, 158]. Parker filed an application for disability insurance benefits on May 20, 2008, claiming he became disabled on April 30, 2008, due to "Severe leg [and] back pain[,] bipolar disorder[,] leg gives out, left hand has part of finger missing and also has a reattached finger." [Tr. 117]. On November 6, 2009, following an evidentiary hearing, the ALJ issued a written decision finding that Parker was not disabled from April 30, 2008 through the date of the decision. [Tr. 16]. After the Appeals Council denied Parker's request for additional administrative review of the ALJ's decision, Parker sought review by the Court.

Parker, age 46 as of the date of the hearing, is about 5' 10" tall and weighs 330 pounds. [Tr. 26]. Parker testified that he underwent surgery on both knees for ACL reconstruction and to trim the meniscus in both knees. He also testified that he has back pain, mainly in his lower back. He stated that his back pain continues down the right side of his buttocks and right leg, and is sometimes so severe that he cannot walk. [Tr. 26]. According to Parker, his physician prescribed pain medication, which causes him to experience dizziness. He also stated that the drug is "not that good." [Tr. 28].

Parker testified that due to the partial amputation of one of his fingers on his left hand, he drops anything that he tries to pick up. He stated that he is right-handed. Parker

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

also testified that he experiences depression and had seen a mental health provider, Dr. McGehee, for treatment. He stated that he takes medication daily to treat his depression, and asserts that the medication doesn't really help. At the hearing, Parker also stated that he suffers from memory problems, including instantly forgetting everything, forgetting where he is when driving, and difficulty with remembering how to return from a place after arriving there. He states that his physician informed him that the memory loss may be linked to his depression.

Parker's treatment records indicate that he first sought medical treatment for right knee pain in September 2004. After undergoing arthroscopic surgery on his right knee in November 2004, Parker complained of chronic right knee pain in March 2007. On July 9, 2009, an x-ray of Parker's right knee showed mild degenerative changes. Parker has complained of left knee pain since May 2008. A June 2009 MRI of Parker's left knee revealed a meniscus tear. After seeing Ryan Snyder, M.D., an orthopedist, Parker underwent left knee arthroscopy on July 24, 2009.

Parker also sought treatment for mental problems. In August 2008, Donald McGehee, Ed.D assigned Parker with a Global Assessment of Functioning ("GAF") score of 31, and concluded that Parker suffers from dysthymic disorder, is paranoid, and remains a high risk of suicide. In October 2008, therapist Mandy Brown at the Mt. Grove Clinic assigned Parker with a GAF score of 38-40 and diagnosed Parker with severe, recurrent, major depressive disorder without psychotic features. In their visits with Parker, both medical providers noted no aberrant characteristics as to Parker's initial

"mental status examination," except for Dr. McGehee's observation that Parker "appeared to be experiencing a severely depressed mood." [Tr. 298].

Parker stated that while at home, he basically sits and watches TV in bed.

**B.     The ALJ's Decision**

To establish his entitlement to benefits, Parker must have shown that he was unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, Parker was not under a "disability" unless his impairment was so severe that he was unable to do his previous work or–any other kind of substantial gainful work which existed in the national economy. *Id.* The ALJ found that Parker did not meet this burden at any time from April 30, 2008, his onset date, to November 6, 2009, the date of the ALJ's decision.

The ALJ found that Parker had some severe impairments: degenerative disc disease of the lumbar spine and morbid obesity. [Tr. 10]. *See* 20 C.F.R. 404.1520(c) and 416.920(c). The ALJ further found that Parker

> has the residual functional capacity ["RFC"] to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and occasional climbing, balancing, stooping, kneeling, crouching and crawling.

[Tr. 11]. Although the ALJ found that Parker could not perform past relevant work, he did find that Parker could perform unskilled, light exertion or sedentary work such as production assembler, small products assembler, cleaner housekeeper, cafeteria attendant,

4

general assembler, final assembler, and table worker. Such jobs exist in "significant numbers" in the national economy. [Tr. 15].

Parker raises several arguments on appeal. He asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) failed to adhere to the de minimus standard at step two of the sequential evaluation process by not finding that Parker's mental impairments and bilateral knee pain were "severe impairments"; 2) failed to accord proper weight to the medical opinions, and 3) failed to properly assess Parker's RFC.

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### A. The ALJ's Finding that Parker's Knee and Mental Impairments are Non-Severe

Parker argues that the ALJ erred in its finding that his bilateral knee pain and mental impairments were not severe. Parker has the burden of proving that his

impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). It is not particularly difficult to meet this standard, but the standard is not "toothless." *Id.* at 708. An impairment or combination of impairments is "non-severe" if it does not significantly limit the individual's physical or mental ability to do "basic work activities." 20 C.F.R. sec. 404.1521(a); Social Security Ruling (SSR) 96-3p. "Basic work activities" include physical functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; as well as mental capacities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. sec. 404.1521(b). Taking this standard into account and considering the record as a whole, the Court concludes that there is not substantial evidence to support the ALJ's finding that Parker's bilateral knee pain and mental disorders are not severe.

Parker alleged bilateral knee problems that caused pain and instability. His treatment records indicate that he first sought medical treatment for right knee pain in September 2004. In November 2004, Parker underwent arthroscopic surgery on his right knee. At a visit to St. John's Clinic in March 2007, he complained of chronic right knee pain. In March 2009, Parker complained of general knee pain. [Tr. 258]. On July 9, 2009, an x-ray of Parker's right knee showed mild degenerative changes with some mild joint space narrowing and marginal osteophytes, mild lateral joint space narrowing, and evidence of ACL reconstruction. [Tr. 304].

At physician visits in May 2008, February 2009, June 2009, and July 2009, Parker complained of left knee pain. [Tr. 200, 259, 285, 304]. An MRI of Parker's left knee on June 16, 2009 revealed findings suspicious for a tear near the posterior horn of the medial meniscus. In July 2009, Parker saw Ryan Snyder, M.D., an orthopedist. Dr. Snyder noted at this visit: "I do think the medial sharp, stabbing pain [Parker] is having is coming from this meniscus tear." [Tr. 308]. Parker underwent left knee arthroscopy on July 24, 2009.

The ALJ noted in his decision that Parker failed to show that his bilateral knee pain is severe because there is no evidence of complications from Parker's left knee surgery nor is there evidence to indicate that Parker's left knee impairment is expected to persist for a twelve-month period after June 2009. The ALJ also stated that Parker's medical records show no subjective complaints of right knee pain or objective abnormalities of the right knee since his 2004 surgery.

The ALJ's review of Parker's medical records is incorrect. In March 2007, Parker complained of chronic right knee pain, and in July 2009, an x-ray showed mild degenerative changes. This contrasts with the ALJ's statement that Parker's records are devoid of subjective complaints or objective abnormalities of the right knee following his 2004 surgery. Additionally, Parker reported left knee pain in May 2008, over one year prior to his surgery in July 2009. This, too, contrasts with the ALJ's reasoning why Parker's left knee impairments were not severe. Although the ALJ noted that Parker "had no prior pain" before the four to five weeks leading to Parker's July 2009 visit according to Dr. Snyder's notes, the ALJ failed to explain why he afforded more weight to Dr. Snyder's notation than Dr. Ball's diagnosis of left knee pain in May 2008.

7

With regard to Parker's mental impairments, the ALJ stated in his decision that he did not give any weight to the GAF score of 31 from Donald McGehee, Ed.D. on August 2008, nor the GAF score of 38-40 from therapist Mandy Brown at the Mt. Grove Clinic on October 30, 2008. Such a decision to discount the GAF scores is within the ALJ's discretion. However, based on the ALJ's conclusion that Parker's "normal mental status examinations and treatment records are consistent with . . . mild restriction[s]," it is unclear to the Court whether the ALJ considered the remainder of the opinions of Dr. McGehee and Ms. Brown. If he did consider them, the ALJ failed to explain either (1) why he discounted the opinions in their entirety, or (2) how the opinions are consistent with his findings. In either case, the ALJ's explanation of his conclusion is unsatisfactory because he failed to explain his rationale. *See* 20 C.F.R. sec. 404.1520a. Although the ALJ noted that Dr. McGehee found that Parker's "mental status examination . . . was within normal limits except for severely depressed mood," [Tr. 14], the diagnoses of both Dr. McGehee and Ms. Brown are wholly inconsistent with the ALJ's finding that Parker's mental impairments are not severe–Dr. McGehee concluded that Parker suffers from dysthymic disorder, is paranoid, and remains a high risk of suicide, and Ms. Brown diagnosed Parker with severe, recurrent, major depressive disorder without psychotic features. It is unclear to the Court how the ALJ considered these medical opinions when arriving at his conclusions.

Given the minimal standard for finding severity, the Court cannot say that there is substantial evidence to support the ALJ's non-severe findings concerning Parker's bilateral knee pain and mental impairments.

### B. Evaluation of Parker's RFC and the Weight Afforded to Medical Opinions

Parker argues that the ALJ failed to properly weigh the opinions of Michael Ball, D.O., Jay Milne, M.D., Ms. Brown, and Dr. McGehee. The Court previously discussed in Part II.A the ALJ's failure to sufficiently explain his consideration of the medical opinions of both Dr. McGehee and Ms. Brown. Additionally, the Court previously noted the ALJ's error in his review of Parker's medical records regarding his knee pain. Because consideration of Parker's knee pain will be reevaluated upon remand and is directly related to the physical medical source statements of Drs. Ball and Milne, the Court refrains from addressing whether the ALJ afforded proper weight to their opinions. Additionally, the Court refrains from addressing the appropriateness of the ALJ's RFC evaluation as that, too, will be reassessed upon remand.

### III. Conclusion

Accordingly, it is hereby ORDERED that this case is reversed and remanded to the ALJ for the purpose of reconsidering Parker's RFC after reconsidering any limitations caused by Parker's bilateral knee pain and mental problems. The ALJ will also have to reconsider those limitations in conjunction with the limitations he finds credible and present those limitations in a new hypothetical to the vocational expert.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 7, 2011

Jefferson City, Missouri